UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

JOE GILBERT YOUNG,               §
TDCJ No. 1299879,                §
                                 §
          Petitioner,            §
                                 §
V.                               §      CIVIL NO. SA-06-CA-1003-NN
                                 §
NATHANIEL A. QUARTERMAN,         §
Director,                        §
Texas Department of Criminal     §
Justice, Correctional            §
Institutions Division,           §
                                 §
          Respondent.            §

_____

## MEMORANDUM OPINION AND ORDER

Petitioner Joe G. Young filed this federal habeas corpus action pursuant to Title 28 U.S.C. Section 2254 seeking to collaterally attack his April, 2005, Bexar County criminal conviction and sentence for possession of cocaine.  The parties have consented to proceed before the undersigned Magistrate Judge.  For the reasons set forth below, respondent's motion to dismiss petitioner's federal habeas corpus petition as untimely will be denied but petitioner's federal habeas corpus petition will be denied on the merits and petitioner denied a Certificate of Appealability.

### I. Background

A.   Indictment

On March 24, 2004, a Bexar County grand jury indicted petitioner in cause no. 2004-CR-2298 on two counts, one charging

petitioner with possession of more then 4 grams but less than 200 grams of cocaine with intent to deliver same and the other, with mere possession of the same quantity of cocaine.[1]

B.    Guilty Plea and Waiver of Appeal

On April 12, 2005, petitioner entered a guilty plea to the Count charging him with possession with intent to distribute cocaine, plead affirmatively to one of the enhancement paragraphs against him, and received an 18-year sentence.[2]  As part of his plea bargain, petitioner expressly waived his right to appeal.[3]

C.    First State Habeas Proceeding

On January 30, 2006, petitioner filed his first application for state habeas corpus relief.[4]  As grounds for relief,

---

[1] A copy of the indictment against petitioner appears among the records relating to petitioner's first state habeas corpus proceeding, i.e., App. no. 64,967-01 (henceforth "First State Habeas Transcript"), submitted to this Court by respondent on January 24, 2007, at pp. 13-14.

Two enhancement paragraphs in the same indictment alleged petitioner had previously been convicted (1) in April, 1990 in cause no. 90-CR-0667B of burglary of a habitation with intent to commit theft and (2) in July, 1998 in cause no. 97-CR-0674 of felony delivery of a controlled substance.

[2] The documents petitioner executed during his guilty plea hearing included among the record from petitioner's first state habeas corpus proceeding are titled "Court's Admonishment and Defendant's Waivers and Affidavit of Admonitions" (First State Habeas Transcript, at pp. 16-21) and "Waiver, Consent to Stipulation of Testimony and Stipulations" (First State Habeas Transcript, at pp. 22-42).

[3] First State Habeas Transcript, at p. 21.

[4] First State Habeas Transcript, at pp. 1-12.

2

petitioner's first state habeas corpus application asserted claims that (1) his guilty plea had been unknowing and involuntary, (2) his conviction resulted from an coerced confession, (3) his conviction resulted from an illegal search and seizure of evidence, and (4) his trial counsel rendered ineffective assistance by (a) failing to spend adequate time preparing for petitioner's case, (b) failing to adequately investigate the case against petitioner, (c) failing to file any briefs or motions on petitioner's behalf, (d) virtue of a conflict of interest which arose when petitioner was subpoenaed and questioned as part of an IRS investigation and criminal prosecution of petitioner's trial counsel, (e) advising petitioner he could get 25-99 years if petitioner went to trial, and (f) failing to advise petitioner of the consequences of his guilty plea.  Petitioner's *pro se* state habeas application mentioned that he had been denied credit against his state sentence for a period of time he was held for questioning by federal authorities in connection with the investigation of petitioner's trial counsel.

In an Order issued February 17, 2006, the state trial court directed petitioner's former trial counsel to submit an affidavit addressing petitioner's specific allegations of ineffective assistance by said counsel.[5]  On March 31, 2006, petitioner's

---

[5] First State Habeas Transcript, at pp. 45-46.

3

former trial counsel filed an affidavit in response to the state habeas trial court's Order.[6]  In an Order issued May 23, 2006, the state habeas trial court issued its findings of fact, conclusions of law, and recommendation that petitioner's state habeas application be denied on the merits.[7]  On June 28, 2006, the Texas Court of Criminal Appeals *dismissed* petitioner's first state habeas corpus application without written order pursuant to Section 501.0081 of the Texas Government Code. *Ex parte Joe Gilbert Young*, App. No. 64,967-01 (Tex. Crim. App. June 28, 2006).

D.   Second State Habeas Corpus Proceeding

On July 13, 2006, petitioner filed his second state habeas corpus application.[8]  As grounds for relief, petitioner presented the same first three claims he had asserted in his first state habeas application, as well as a claim in which he complained his trial counsel had rendered ineffective assistance by (1) virtue of the conflict of interest which arose when federal investigators questioned petitioner and petitioner's mother about

_____

[6] First State Habeas Transcript, at pp. 48-50.

[7] First State Habeas Transcript, at pp. 56-60.
The state habeas trial court made specific factual findings and conclusions of law rejecting petitioner's collateral attacks upon the validity of his guilty plea and upon the performance of petitioner's trial counsel.

[8] *See* records from petitioner's second state habeas corpus proceeding, i.e., App. no. 64,967-01 (henceforth "Second State Habeas Transcript"), at pp. 1-12.

4

their dealings with petitioner's trial counsel, (2) failing to file a motion to dismiss the evidence against petitioner as the product of an illegal search and seizure, (3) failing to question the passenger of petitioner's vehicle, and (4) failing to spend adequate time investigating the case against petitioner because of the federal tax evasion case then-pending against said counsel.

In an Order issued August 31, 2006, the state habeas trial court adopted verbatim the factual findings and legal conclusions it had made in petitioner's first state habeas corpus proceeding and recommended state habeas relief be denied.[9]  On September 27, 2006, the Texas Court of Criminal Appeals denied state habeas relief without written order based on the findings of the trial court made without a hearing. *Ex parte Joe Gilbert Young*, App. no. 64,967-02 (Tex. Crim. App. September 27, 2006).

E.   Federal Habeas Proceeding

On November 13, 2006, petitioner executed a *pro se* federal habeas corpus petition and an application for leave to proceed *in forma pauperis*, both of which were received by the Clerk of this Court on November 15, 2006. *Docket entry nos. 1 & 3.*  On March 30, 2007, respondent filed an answer in which he argued, in pertinent part, that petitioner's federal habeas corpus petition

---

[9] Second State Habeas Transcript, at pp. 24-29.

was time-barred under applicable federal law. *Docket entry no. 18.*

## II. <u>AEDPA Standard of Review</u>

Because petitioner filed his federal habeas corpus action after the effective date of the AEDPA, this Court's review of petitioner's claims for federal habeas corpus relief is governed by the AEDPA. *Penry v. Johnson*, 532 U.S. 782, 792, 121 S.Ct. 1910, 1918, 150 L.Ed.2d 9 (2001). Under the AEDPA standard of review, this Court cannot grant petitioner federal habeas corpus relief in this cause in connection with any claim that was adjudicated on the merits in state court proceedings, unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141, 125 S.Ct. 1438, 161 l.Ed.2d 334 (2005); *Williams v. Taylor*, 529 U.S. 362, 404-05, 120 S.Ct. 1495, 1519, 146 L.Ed.2d 389 (2000); 28 U.S.C. § 2254(d).

The Supreme Court has concluded the "contrary to" and "unreasonable application" clauses of Title 28 U.S.C. Section 2254(d)(1) have independent meanings. *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002). Under the

6

"contrary to" clause, a federal habeas court may grant relief if
(1) the state court arrives at a conclusion opposite to that
reached by the Supreme Court on a question of law or (2) the
state court decides a case differently than the Supreme Court on
a set of materially indistinguishable facts. *Brown v. Payton*, 544
U.S. at 141, 125 S.Ct. at 1438; *Mitchell v. Esparza*, 540 U.S. 12,
15-16, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003)("A state court's
decision is 'contrary to' our clearly established law if it
'applies a rule that contradicts the governing law set forth in
our cases' or it 'confronts a set of facts that are materially
indistinguishable from a decision of this Court and nevertheless
arrives at a result different from our precedent.'").  A state
court's failure to cite governing Supreme Court authority does
not, *per se*, establish the state court's decision is "contrary
to" clearly established federal law: "the state court need not
even be aware of our precedents, 'so long as neither the
reasoning nor the result of the state-court decisions contradicts
them.'" *Mitchell v. Esparza*, 540 U.S. at 16, 124 S.Ct. at 10.

Under the "unreasonable application" clause, a federal
habeas court may grant relief if the state court identifies the
correct governing legal principle from the Supreme Court's
decisions but unreasonably applies that principle to the facts of
the petitioner's case. *Brown v. Payton*, 544 U.S. at 141, 125
S.Ct. at 1439; *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct.

7

2527, 2534-35, 156 L.Ed.2d 471 (2003).  A federal court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Wiggins v. Smith*, 539 U.S. at 520-21, 123 S.Ct. at 2535.  The focus of this inquiry is on whether the state court's application of clearly established federal law was objectively unreasonable; an "unreasonable" application is different from a merely "incorrect" one. *Schriro v. Landrigan*, ___ U.S. ___, ___, 127 S.Ct. 1933, 1939, 167 L.Ed.2d 836 (2007)("The question under the AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold."); *Wiggins v. Smith*, 539 U.S. at 520, 123 S.Ct. at 2535; *Price v. Vincent*, 538 U.S. 634, 641, 123 S.Ct. 1848, 1853, 155 L.Ed.2d 877 (2003)("it is the habeas applicant's burden to show that the state court applied that case to the facts of his case in an objectively unreasonable manner").

Legal principles are "clearly established" for purposes of AEDPA review when the holdings, as opposed to the dicta, of Supreme Court decisions as of the time of the relevant state-court decision establish those principles. *Yarborough v. Alvarado*, 541 U.S. 652, 660-61, 124 S.Ct. 2140, 2147, 158 L.Ed.2d 938 (2004)("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state

court renders its decision.'"); *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003).

The AEDPA also significantly restricts the scope of federal habeas review of state court fact findings.  A petitioner challenging state court factual findings must establish by clear and convincing evidence that the state court's findings were erroneous. *Schriro v. Landrigan*, ___ U.S. at ___, 127 S.Ct. at 1939-40 ("AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'"); *Rice v. Collins*, 546 U.S. 333, ___, 126 S.Ct. 969, 974, 163 L.Ed.2d 824 (2006)("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'"); *Miller-El v. Dretke*. 545 U.S. 231, 240, 125 S.Ct. 2317, 2325, 162 L.Ed.2d 196 (2005)("we presume the Texas court's factual findings to be sound unless Miller-El rebuts the 'presumption of correctness by clear and convincing evidence.'"); 28 U.S.C. §2254(e)(1).

However, the deference to which state-court factual findings are entitled under the AEDPA does not imply an abandonment or abdication of federal judicial review. *See Miller-El v. Dretke*, 545 U.S. at 240, 125 S.Ct. at 2325 (the standard is "demanding but not insatiable"); *Miller-El v. Cockrell*, 537 U.S. 322, 340,

123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003)("Even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review.  Deference does not by definition preclude relief.").

Finally, in this Circuit, a federal habeas court reviewing a state court's rejection on the merits of a claim for relief pursuant to the AEDPA must focus exclusively on the propriety of the ultimate decision reached by the state court and not evaluate the quality, or lack thereof, of the state court's written opinion supporting its decision. *See St. Aubin v. Quarterman*, 470 F.3d 1096, 1100 (5th Cir. 2006)(holding Section 2254(d) permits a federal habeas court to review only a state court's decision and not the written opinion explaining that decision), *cert. denied*, ___ U.S. ___, 127 S.Ct. 2133, 167 L.Ed.2d 869 (2007); *Amador v. Quarterman*, 458 F.3d 397, 410 (5th Cir. 2006)(holding the same), *cert. denied*, ___ U.S. ___, 127 S.Ct. 2129, 167 L.Ed.2d 866 (2007); *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003)(holding the precise question before a federal habeas court in reviewing a state court's rejection on the merits of an ineffective assistance claim is whether the state court's ultimate conclusion was objectively reasonable), *cert. denied*, 541 U.S. 1045 (2004); *Anderson v. Johnson*, 338 F.3d 382, 390 (5th Cir. 2003)(holding a federal habeas court reviews only a state court's decision and not the opinion explaining that decision);

10

*Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002)(*en banc*)(holding a federal court is authorized by §2254(d) to review only a state court's decision and not the written opinion explaining that decision), *cert. denied*, 537 U.S. 1104 (2003).

### III. <u>Statute of Limitations Issue</u>

A.   <u>Rules of General Applicability</u>

The AEDPA imposes a one-year limitations period on the filing of a federal habeas corpus petition. *Pace v. DiGuglielmo*, 544 U.S. 408, 410, 125 S.Ct. 1807, 1809, 161 L.Ed.2d 669 (2005); *Johnson v. Quarterman*, 483 F.3d 278, 285 (5th Cir. 2007); *Prieto v. Quarterman*, 456 F.3d 511, 514 (5th Cir. 2006); *Emerson v. Johnson*, 243 F.3d 931, 932 (5th Cir. 2001); 28 U.S.C. §2244(d)(1).  Under the AEDPA's one-year limitations provision, a convicted criminal defendant must file a Section 2254 petition within one year of the date his *conviction* becomes final generally or within one year of the AEDPA's effective date, i.e., April 24, 1996, if the defendant's *conviction* became final prior to that date. *Emerson v. Johnson*, 243 F.3d at 932; *Ybanez v. Johnson*, 204 F.3d 645, 646 (5th Cir. 2000), *cert. denied*, 531 U.S. 881 (2000); *Felder v. Johnson*, 204 F.3d 168, 169 (5th Cir. 2000), *cert. denied*, 531 U.S. 1035 (2000); *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Turner v. Johnson*, 177 F.3d 390, 391 (5th Cir. 1999), *cert. denied*, 528 U.S. 1007 (1999); *Fisher v. Johnson*, 174 F.3d

11

710, 712 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Flanagan v. Johnson*, 154 F.3d 196, 199-201 (5th Cir. 1998).

The AEDPA's one-year limitations period serves the well-recognized interest in the finality of state court judgments by restricting the time a prospective federal habeas petitioner has in which to seek federal habeas review. *See Rhines v. Weber*, 544 U.S. 269, 276-77, 125 S.Ct. 1528, 1534-35, 161 L.Ed.2d 440 (2005) (recognizing that stay and abeyance is available in some cases as a means of avoiding the harsh impact of the total exhaustion requirement combined with the absence of any statutory tolling of the AEDPA's limitations period arising from the filing of a federal habeas petition that is subsequently dismissed for lack of exhaustion); *Woodford v. Garceau*, 538 U.S. 202, 206, 123 S.Ct. 1398, 1401, 155 L.Ed.2d 363 (2003)("Congress enacted the AEDPA to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases, and 'to further the principles of comity, finality, and federalism.'").

For the reasons set forth below, this Court concludes none of the petitioner's claims for federal habeas corpus relief herein are barred by the AEDPA's one-year statute of limitations.

B.   Calculating the Applicable Limitations Period

Insofar as petitioner seeks relief pursuant to Title 28 U.S.C. Section 2254 in this Court, that effort is subject to the one-year time limit provided for under Title 28 U.S.C. Section

2254(d) by the Anti-terrorism and Effective Death Penalty Act of 1996. Under the AEDPA's one-year limitations provision, a convicted criminal defendant must file a Section 2254 petition within one year of the date his conviction becomes final generally or within one year of the AEDPA's effective date, i.e., April 24, 1996, if the defendant's conviction became final prior to that date. *Ybanez v. Johnson*, 204 F.3d at 646; *Felder v. Johnson*, 204 F.3d at 169; *Coleman v. Johnson*, 184 F.3d at 401; *Turner v. Johnson*, 177 F.3d at 391; *Fisher v. Johnson*, 174 F.3d at 712; *Flanagan v. Johnson*, 154 F.3d at 199-201.

In this cause, respondent argues petitioner's April 12, 2005 conviction in cause no. 2004-CR-2298 became final on the same date petitioner entered his guilty plea and was sentenced because he expressly waived his right to appeal his conviction and sentence. Assuming the accuracy of this argument, for the reasons discussed below, this Court concludes petitioner's claims herein are not barred by the AEDPA's one-year statute of limitations.

Petitioner filed his federal habeas corpus petition pursuant to the prisoner mailbox rule not earlier than November 13, 2006, i.e., the date he executed both his *pro se* petition and application for leave to proceed *in forma pauperis* and the date of the inmate trust account certificate appended to petitioner's application for leave to proceed *in forma pauperis*. Thus,

assuming petitioner's conviction became final for purposes of the AEDPA's statute of limitations on the date petitioner entered his guilty plea, the one-year deadline for the filing of petitioner's *federal* habeas corpus petition expired long before petitioner ever filed his *federal* habeas corpus petition.  However, this fact does not end the relevant limitations inquiry.

C.   <u>Statutory Tolling Applies</u>

Title 28 U.S.C. Section 2244(d)(2) provides that the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation...." *Godfrey v. Dretke*, 396 F.3d 681, 684-86 (5th Cir. 2005), *cert. denied*, 546 U.S. 880 (2005); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999), *cert. denied*, 529 U.S. 1099 (2000); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999).  The limitations period applicable to petitioner was tolled during the time period his state habeas corpus applications were pending in the state courts.  When these periods of statutory tolling are considered, petitioner's federal habeas corpus petition was timely filed.

Petitioner's first state habeas corpus application was filed January 30, 2006.  As of that date, some 269 days had passed since petitioner's conviction became final on April 12, 2005. Thus, ninety-six days of the AEDPA's one-year statute of

limitations remained unexpired as of January 6, 2006.  The Texas Court of Criminal Appeals denied petitioner's first state habeas corpus application on June 28, 2006.  Thus, the following date the period of statutory tolling ceased to apply and the remaining 96-day portion of the one-year limitations period began to run.

Petitioner filed his *second* state habeas corpus application on July 13, 2006, after 15 days of the 96-day limitations had expired, leaving petitioner 81-days remaining.  The Texas Court of Criminal Appeals denied petitioner's second state habeas application on September 27, 2006.

Respondent concedes petitioner filed his federal habeas corpus petition pursuant to the prisoner mailbox rule on November 13, 2006. *See* Respondent's Answer, filed March 30, 2007, docket entry no. 18, at p. 2 & n.2, *citing Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998)(holding prisoner's *pro se* habeas pleadings were filed when same were tendered to prison officials for mailing to federal court).  This November 13, 2006 filing date was well within the 81-day period of limitations remaining as of September 27, 2006.  Therefore, when the applicable periods of statutory tolling are considered, petitioner's federal habeas corpus petition was timely filed.

Respondent argues the petitioner is not entitled to the benefit of statutory tolling under Section 2244(d)(2) for the duration of the period in which petitioner's *first* federal habeas

15

corpus petition was pending because the state court ultimately dismissed same pursuant to a state statute which mandates exhaustion of administrative remedies before a prisoner may assert claims raising challenges to denials of credit-for-time-served in a state habeas corpus proceeding.  More specifically, respondent argues (1) petitioner's *first* state habeas application included a complaint that petitioner had been denied credit against his state sentence for time petitioner served in federal custody while petitioner was questioned as part of a federal investigation into petitioner's trial counsel's business practices and (2) the Texas Court of Criminal Appeals ultimately dismissed petitioner's *first* state habeas application because petitioner had not exhausted administrative remedies with regard to that particular claim, as required by Section 501.0081 of the Texas Government Code.  Accordingly, respondent concludes petitioner's *first* state habeas application was never "properly filed" within the meaning of Section 2244(d)(2).

Respondent's argument fails for at least three different, yet related, reasons.  First, in *Artuz v. Bennett*, 531 U.S. 4, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000), the Supreme Court took a practical, common sense, approach to interpreting the "properly filed" language of Section 2244(d)(2), holding the inclusion of *claims* in a state habeas application which were procedurally barred under applicable state procedural rules did not render the

16

entire application *improperly filed* for purposes of Section 2244(d)(2).  The Supreme Court noted that only individual claims, and not an entire application, could be procedurally defaulted under state procedural rules and the drafters of Section 2244(d)92) certainly must have understood the difference between a properly filed *application* and a properly filed *claim*. *Artuz v. Bennett*, 531 U.S. at 9-10, 121 S.Ct. at 364.  "An application if 'filed,' as that term is commonly understood, when it is delivered to, and accepted by, the appropriate court officer for placement into the official record." *Artuz v. Bennett*, 531 U.S. at 9, 121 S.Ct. at 363.

Section 501.0081 of the Texas Government Code provides in pertinent part that state prisoners seeking credit for time served must exhaust available state prison administrative remedies on such claims *unless* the prisoner is within 180 days of a presumptive release date. Tex. Govt. Code Ann. §501.0081 (Vernon 2004).  Thus, a Texas habeas court receiving a state habeas application submitted by a prisoner who asserts a credit-for-time-served claim must necessarily file the prisoner's application and then proceed to ascertain whether administrative remedies on the prisoner's claim have been exhausted or, alternatively, whether the prisoner falls within the statutory exception for prisoners close to a presumptive release date. Thus, the dismissal of petitioner's *first* state habeas

17

application, like the dismissal in *Artuz*, was premised upon the existence of a state procedural barrier to the state court's consideration of the merits of a particular claim contained in an otherwise "properly filed" state habeas application.

Second, the Fifth Circuit has repeatedly rejected efforts to construe Section 2244(d)(2)'s "properly filed" as broadly as respondent argues this Court should construe same. *See Hall v. Cain*, 216 F.3d 518, 520 (5th Cir. 2000)(holding a Louisiana state habeas application which was subsequently dismissed under state writ-abuse principles as "repetitive" was "properly filed" within the meaning of Section 2244(d)(2)); *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)(holding a Louisiana prisoner's state habeas application, which was subsequently dismissed as untimely under applicable state law was nonetheless "properly filed" for purposes of Section 2244(d)(2)); *Villegas v. Johnson*, 184 F.3d 467, 469-70 (5th Cir. 1999)(holding a Texas prisoner's state habeas petition, which was subsequently dismissed under state writ-abuse principles, was "properly filed" within the meaning of Section 2244(d)(2) and, therefore, tolled the applicable limitations period). Petitioner's *first* state habeas application was dismissed only after the state courts determined that one claim for relief, buried among numerous others, had not been administratively exhausted. As a necessary prerequisite to the state habeas court's determination on that issue, petitioner's

*first* state habeas application was treated as "properly filed" by the appropriate state court.

Finally, in *Davis v. Quarterman*, SA-05-CA-844-OG, Judge Orlando L. Garcia writing for this Court concluded that a federal habeas petitioner was entitled to statutory tolling of the AEDPA's statute of limitation during the pendency of a state habeas application which was subsequently dismissed for failure to comply with applicable state procedural rules requiring a clear explication of the grounds for relief therein. *Davis v. Quarterman*, SA-05-CA-844-OG, slip op. at pp. 24-25.  There is no rational distinction to be drawn between the state habeas court's dismissal of Davis' second state habeas application and the state court's dismissal of petitioner's first state habeas application. In both cases, the state habeas court waited many months before ruling there were procedural defects in the relevant state habeas applications.

The guiding principle in all these decisions is that set forth in the Supreme Court's opinion in *Artuz*: a state habeas application (like petitioner's first such application) is "properly filed" if it is submitted to a court of appropriate jurisdiction in a manner that satisfies the requirements for making such an application part of the official record. *Artuz v. Bennett*, 531 U.S. at 9, 121 S.Ct. at 363-64.  Petitioner's first state habeas corpus application satisfied this standard and

19

petitioner is entitled to statutory tolling for the duration of the time period his first state habeas application was pending before the state courts.

D.    Equitable Tolling Also Applies

A petitioner is entitled to equitable tolling of the AEDPA's one-year limitations period when the prisoner acts in reasonable reliance upon misinformation communicated to him by the state or a federal habeas court or when the federal habeas court unwittingly hinders the petitioner's ability to pursue federal habeas relief. *Larry v. Dretke*, 361 F.3d 890, 897 (5th Cir. 2004), *cert. denied*, 543 U.S. 893 (2004); *Alexander v. Cockrell*, 294 F.3d 626, 629-30 (5th Cir. 2002); *United States v. Patterson*, 211 F.3d 927, 930-32 (5th Cir. 2000).

This Court held recently in *Martinez v. Quarterman*, 2006 WL 2042958, *7 (W.D. Tex. July 11, 2006), that a federal habeas petitioner reasonably relied, and was entitled to equitable tolling based, upon the Texas Court of Criminal Appeals' issuance of a confusing pair of orders purporting to dispose of petitioner's petition for discretionary review, one of which was designated as "final," to determine when the petitioner's federal habeas petition was due.

The Fifth Circuit has repeatedly held the fact a petitioner is proceeding *pro se* will not, standing alone, support equitable tolling. *Felder v. Johnson*, 204 F.3d at 170-71 (holding that

neither the petitioner's pro se status, incarceration, claims of
actual innocence, nor complaints of an inadequate prison law
library warranted equitable tolling); *Turner v. Johnson*, 177 F.3d
at 392 (recognizing that neither a petitioner's unfamiliarity
with the legal process nor his lack of representation during the
applicable filing period merits equitable tolling, regardless of
whether the unfamiliarity is due to illiteracy or some other
reason); *Fisher v. Johnson*, 174 F.3d at 714 (holding that neither
ignorance of the law nor a prisoner's *pro se* status ordinarily
excuses an untimely filing).  However, none of those opinions
dealt with circumstances such as those in petitioner's case.

The state habeas trial court treated petitioner's first
state habeas application as properly filed and directed
petitioner's former trial counsel to submit evidence, in the form
of an affidavit, addressing the merits of petitioner's complaints
of ineffective assistance.[10]  The state's response to
petitioner's first state habeas application urged denial of same
on the merits and made no mention of, or allusion to, any
procedural defect in that pleading.[11]  The state habeas trial
court then issued its findings of fact and conclusions of law
addressing the merits of petitioner's claims for relief,
recommending denial of all claims for relief, and including no

---

[10] First State Habeas Transcript, at pp. 45-47.

[11] First State Habeas Transcript, at pp. 52-55.

suggestion therein that petitioner's application be dismissed on any procedural ground.[12]  Thus, until the Texas Court of Criminal Appeals dismissed petitioner's first state habeas application on June 28, 2006, petitioner had no reason to suspect his first state habeas application might contain a procedural defect or that it might be disposed of on procedural, rather than substantive, grounds.  Moreover, the only rational construction which can be given the state habeas trial court's Order designating issues is that court believed petitioner had properly filed a state habeas application which necessitated a disposition on the merits of petitioner's ineffective assistance claims.  Under these circumstances, the *pro se* petitioner reasonably relied on the state habeas trial court's issuance of its Order designating issues as tacit approval of the filing of petitioner's first state habeas application.

Any "misinformation" regarding the propriety of the filing of petitioner's first state habeas application communicated to petitioner via the state habeas trial court's Order designating issues entitles petitioner to equitable tolling during the time period between the date the state habeas trial court issued its Order designating issues and the date the Texas Court of Criminal Appeals liberally construed petitioner's first state habeas

---

[12] First State Habeas Transcript, at pp. 56-60.

22

application as asserting a claim which had not been administratively exhausted.

E.   Conclusion

For the reasons set above, this Court concludes respondent's motion to dismiss petitioner's federal habeas corpus petition as untimely is without merit.

### IV. Involuntary & Unknowing Guilty Plea

A.   The Claim

Petitioner alleges his trial counsel (1) failed to advise him regarding the details of petitioner's guilty plea and (2) informed petitioner he would receive a sentence of between 25 to 99 years if petitioner chose to fight the charges against him. As a result, petitioner argues, his guilty plea was both involuntary and unknowing.

B.   State Court Disposition

In the course of petitioner's first state habeas corpus proceeding, the state habeas trial court (1) found petitioner's trial counsel (attorney Alan Brown) submitted an affidavit in which he averred that he explained the consequences of petitioner's plea to petitioner, (2) found attorney Brown's affidavit to be credible, (3) found it had also explained the consequences of petitioner's plea to petitioner at the time of petitioner's guilty plea hearing, (4) found petitioner acknowledged an understanding of the consequences of his guilty

plea in the written documents petitioner executed
contemporaneously with entry of his guilty plea, and (5)
concluded petitioner's guilty plea was entered knowingly and
voluntarily.[13]  In the course of petitioner's second state habeas
corpus proceeding, the state habeas trial court expressly re-
adopted the foregoing findings and conclusions.[14]  The Texas
Court of Criminal Appeals implicitly adopted the state habeas
trial court's findings and conclusions when it denied
petitioner's second state habeas application. *Ex parte Joe
Gilbert Young*, App. no. 64,967-02 (Tex. Crim. App. September 27,
2006).

C.    AEDPA Review

    1.    The Voluntariness of Petitioner's Plea

    The plea must be entered "voluntarily," i.e., not be
    the product of "actual or threatened physical harm,
    or... mental coercion overbearing the will of the
    defendant" or of state-induced emotions so intense that
    the defendant was rendered unable to weigh rationally
    his options with the help of counsel.

*Matthew v. Johnson*, 201 F.3d 353, 365 (5th Cir. 2000)(*citing
Brady v. United States*, 397 U.S. 742, 750, 90 S.Ct. 1463, 1470,
25 L.Ed.2d 747 (1970)), *cert. denied*, 531 U.S. 830 (2000).

    A guilty plea will be upheld on collateral review if entered
into voluntarily, intelligently, and knowingly.[15]  *See Daniel v.*

---

[13] First State Habeas Transcript, at pp. 58-59.

[14] Second State Habeas Transcript, at pp. 27-28.

[15] While the terms "voluntary" and "knowing" are frequently
used interchangeably, they embody different concepts, i.e., a

*Cockrell*, 283 F.3d 697, 702-03 (5th Cir. 2002)(holding a guilty plea must be voluntary, knowing, and intelligent), *cert. denied*, 537 U.S. 874 (2002), *overruled on other grounds Glover v. United States*, 531 U.S. 198, 203, 121 S.Ct. 696, 700, 148 L.Ed.2d 604 (2001); *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000)(holding the same); *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000)(holding the same), *cert. denied*, 532 U.S. 1067 (2001); *Matthew v. Johnson*, 201 F.3d at ("a plea not voluntarily and intelligently made has been obtained in violation of due process and is void."). The longstanding test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985); *United States v. Brown*, 328 F.3d 787, 789 (5th Cir. 2003); *Matthew v. Johnson*, 201 F.3d at 364.

"Ordinarily, a defendant will not be heard to refute his testimony given under oath when pleading guilty." *United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985). If, however, the defendant offers specific factual allegations *supported by the*

---

plea of guilty is not voluntary if induced by threats, misrepresentations, unfulfilled promises, or promises of an improper nature; whereas, a guilty plea is "knowing" if the defendant understood the consequences of his plea, i.e., the defendant understood the maximum possible punishment he faced if convicted. *United States v. Hernandez*, 234 F.3d at 254 n.3.

*affidavit of a reliable third person*, then he is entitled to a hearing on his allegations. *United States v. Fuller*, 769 F.2d at 1099; *United States v. McCord*, 618 F.2d 389, 393-94 (5th Cir. 1980); *Dugan v. United States*, 521 F.2d 231, 233 (5th Cir. 1975). "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977); *United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002)("Reviewing courts give great weight to the defendant's statements at the plea colloquy."); *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998)(*quoting* the language quoted above from *Blackledge*); *Lott v. Hargett*, 80 F.3d 161, 168 (5th Cir. 1996); *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994)("Although their attestations to voluntariness are not an absolute bar to raising this claim, appellants face a heavy burden in proving that they are entitled to relief because such testimony in open court carries a strong presumption of verity."), *cert. denied*, 513 U.S. 968 (1994); *United States v. Raetzsch*, 781 F.2d 1149, 1151 (5th Cir. 1986); *United States v. Patterson*, 739 F.2d 191, 195 (5th Cir. 1984).

The representations made by the defendant, his lawyer, and the prosecutor at a plea hearing, as well as the findings made by the trial judge accepting the plea, constitute a formidable barrier to any subsequent collateral attack. *Blackledge v. Allison*, 431 U.S. at 73-74, 97 S.Ct. at 1629; *United States v.*

26

*Cothran*, 302 F.3d at 283-84; *United States v. Cervantes*, 132 F.3d at 1110; *DeVille v. Whitley*, 21 F.3d at 659; *United States v. Smith*, 844 F.2d 203, 208 (5th Cir. 1988); *United States v. Raetzsch*, 781 F.2d at 1151; *United States v. Corbett*, 742 F.2d 173, 178 n.11 (5th Cir. 1984); *United States v. Patterson*, 739 F.2d at 195; *United States v. Nuckols*, 606 F.2d 566, 569-70 (5th Cir. 1979)(holding the threatened prosecution of a third-party, such as a member of the defendant's family, does not itself render a guilty plea involuntary when there is probable cause for such prosecution). *See also United States v. McElhaney*, 469 F.3d 382, 385 (5th Cir. 2006)(holding there is no intrinsic constitutional infirmity in promising leniency to a third party in exchange for a guilty plea).

It is true that when a criminal defendant pleads guilty on the basis of a promise by his defense counsel or the prosecutor, whether or not the promise is fulfillable, breach of that promise taints the voluntariness of his plea. *Daniel v. Cockrell*, 283 F.3d at 703 (recognizing a distinction between a clear and unequivocal promise or guarantee of a lesser sentence and a mere inaccurate prediction that a lesser sentence would be imposed); *Montoya v. Johnson*, 226 F.3d at 405 (holding that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such a promise must be fulfilled); *United*

27

*States v. Saling*, 205 F.3d 764, 766 (5th Cir. 2000)(holding the same); *United States v. Cervantes*, 132 F.3d at 1110 (holding the same); *United States v. Amaya*, 111 F.3d 386, 388-89 (5th Cir. 1997)(holding a guilty plea induced by deception, an unfulfilled promise, or misrepresentation is an involuntary plea and a trial court's unenforceable promise to review the Government's decision whether to file a §5K1.1 motion rendered a guilty plea involuntary); *McNeil v. Blackburn*, 802 F.2d 830, 832 (5th Cir. 1986); *Smith v. Blackburn*, 785 F.2d 545, 548 (5th Cir. 1986); *Bonvillain v. Blackburn*, 780 F.2d 1248, 1251 (5th Cir. 1986), *cert. denied*, 476 U.S. 1143 (1986).

However, a "mere understanding" on the part of the defendant that he would receive a lesser sentence in exchange for a guilty plea will not abrogate that plea should a heavier sentence actually be imposed. *Daniel v. Cockrell*, 283 F.3d at 703 (holding a guilty plea is not rendered involuntary by the defendant's mere subjective understanding that he would receive a lesser sentence, even when the defendant's misunderstanding was based on defense counsel's inaccurate prediction that a lesser sentence would be imposed); *United States v. Vadner*, 160 F.3d 263, 264-65 (5th Cir. 1998)(holding trial court's failure to advise defendant of his ineligibility for probation did not render guilty plea involuntary); *DeVille v. Whitley*, 21 F.3d at 658 ("A mere understanding by Appellants, however, that they would receive a

lesser sentence in exchange for a guilty plea will not abrogate the plea should a heavier sentence actually be imposed."); *Spinelli v. Collins*, 992 F.2d 559, 561 (5th Cir. 1993); *United States v. Santa Lucia*, 991 F.2d 179, 180 (5th Cir. 1993)(holding a defendant's reliance upon his counsel's erroneous prediction regarding the probable length of sentence does not render a defendant's guilty plea involuntary or unknowing where the defendant was properly advised regarding the maximum length of sentence possible under applicable law); *Harmason v. Smith*, 888 F.2d 1527, 1529 (5th Cir. 1989); *Davis v. Butler*, 825 F.2d 892, 894 (5th Cir. 1987); *McNeil v. Blackburn*, 802 F.2d at 832; *Smith v. McCotter*, 786 F.2d 697, 701 (5th Cir. 1986).

Any documents signed by the defendant at the time of the guilty plea are entitled to "great evidentiary weight." *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994), *cert. denied*, 513 U.S. 1064 (1994); *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985), *cert. denied*, 474 U.S. 838 (1985).  The defendant's signature on guilty plea documents is *prima facie* proof of the validity of the plea. *Theriot v. Whitley*, 18 F.3d 311, 314 (5th Cir. 1994).

In order for a prisoner to receive federal habeas relief on the basis of alleged *promises* that are inconsistent with representations made in open court when his guilty plea was accepted, he must prove (1) exactly what the terms of the alleged

promise were; (2) exactly when, where, and by whom such a promise was made; and (3) the precise identity of an eyewitness to the promise. *Daniel v. Cockrell*, 283 F.3d at 703; *United States v. Cervantes*, 132 F.3d at 1110; *DeVille v. Whitley*, 21 F.3d at 658; *United States v. Smith*, 915 F.2d 959, 963 (5th Cir. 1990); *Harmason v. Smith*, 888 F.2d at 1529; *Ellis v. Lynaugh*, 883 F.2d 363, 366 n.5 (5th Cir. 1989); *Davis v. Butler*, 825 F.2d at 894; *McNeil v. Blackburn*, 802 F.2d at 833; *Smith v. McCotter*, 786 F.2d at 701; *Smith v. Blackburn*, 785 F.2d at 548; *Bonvillain v. Blackburn*, 780 F.2d at 1251. *See also Harmason v. Smith*, 888 F.2d at 1532 (holding a prediction, prognosis, or statement of probabilities does not constitute an actual promise which, if breached, renders a guilty plea involuntary); *United States v. Stumpf*, 827 F.2d 1027, 1030 (5th Cir. 1987)(holding a defendant's reliance on his attorney's erroneous prediction of leniency is insufficient to render a guilty plea involuntary).

The defendant bears the burden of proving by a preponderance of the evidence the underlying facts that establish a breach of the terms of a plea bargain agreement. *United States v. Lewis*, 476 F.3d 369, 387 (5th Cir. 2007), *cert. denied*, ___ U.S. ___, 127 S.Ct. 2893, 167 L.Ed.2d 1164 (2007); *United States v. Price*, 95 F.3d 364, 367 (5th Cir. 1996); *United States v. Garcia-Bonilla*, 11 F.3d 45, 46 (5th Cir. 1993); *United States v. Watson*,

988 F.2d 544, 548 (5th Cir. 1993), *cert. denied sub nom. Campbell v. United States*, 510 U.S. 1048 (1994).

The proper inquiry in determining whether a plea bargain has been breached is whether the prosecution's conduct comports with the defendant's *reasonable* understanding of the plea agreement. *United States v. Lewis*, 476 F.3d at 388; *United States v. Munoz*, 408 F.3d 222, 226 (5th Cir. 2005); *United States v. Gonzalez*, 309 F.3d 882, 886 (5th Cir. 2002); *United States v. Reeves*, 255 F.3d 208, 210 (5th Cir. 2001); *United States v. Saling*, 205 F.3d at 776; *United States v. Price*, 95 F.3d at 367; *United States v. Witte*, 25 F.3d 250, 262 (5th Cir. 1994), *affirmed*, 515 U.S. 389, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995).

Petitioner's allegations that his guilty plea was entered involuntarily and unknowingly are completely refuted by his own representations in his plea documents.  More specifically, petitioner asserted that (1) he had not been threatened, coerced, or placed in fear by any person to induce his plea,[16] (2) he had not received any promises to induce his plea other than those contained in his written plea agreement,[17] and (3) he was pleading guilty because he was guilty and for no other reason.[18] Petitioner does not allege any specific facts establishing his

---

[16] First State Habeas Transcript, at p. 18.

[17] *Id.*

[18] *Id.*

guilty plea was induced by any unkept promises or any misrepresentations regarding his actual sentence.  Rather, he asserts that his trial counsel stated that petitioner would receive a sentence of from 25 to 99 years if petitioner chose to proceed to trial and contest his guilt.  However, this latter assertion is unsupported by any affidavit from a third-party.

Moreover, having independently reviewed the police report included in petitioner's plea documents, the authenticity and accuracy of which petitioner stipulated to, assuming attorney Brown so advised petitioner such advice constituted advice well within the parameters of reasonable proficient legal assistance. Petitioner agreed in his plea documents that he had been the driver of a vehicle which police pulled over during a routine traffic stop that subsequently resulted in the discovery of a clear plastic bag in petitioner's hand which was later determined to contain crack cocaine and that an additional quantity of crack cocaine was discovered inside the vehicle he was driving.[19] While petitioner now contests the validity of the traffic stop in question, he has alleged no facts which suggest either (1) he was not carrying a baggie of crack cocaine in his hand when arrested or (2) more crack cocaine was not found inside the vehicle he was driving.

_____

[19] First State Habeas Transcript, at p. 27.

Petitioner does not allege any specific facts establishing that he was promised anything beyond those promises contained in his plea agreement.  Likewise, petitioner presents this Court with no factual allegations from any third party sufficient to raise an issue as to the voluntariness of his guilty plea.  In fact, the representations contained in petitioner's plea documents belie any contention petitioner was promised anything beyond the express terms of his plea agreement: "I have not been threatened, coerced or placed in fear by any person to induce me to enter my plea."[20]

At best, then, petitioner may have had a unilateral, subjective, misunderstanding as to the content of petitioner's plea bargain.  However, any subjective misunderstanding petitioner might have possessed regarding his plea bargain was not supported by any representations contained in petitioner's plea documents.  Thus, petitioner's subjective misunderstanding does not render petitioner's guilty plea involuntary. *See Daniel v. Cockrell*, 283 F.3d at 703-04 ("a guilty plea is not rendered involuntary because the defendant's misunderstanding was based on defense counsel's inaccurate *prediction* that a lesser sentence would be imposed."); *DeVille v. Whitley*, 21 F.3d at 658 ("A mere understanding by Appellants, however, that they would receive a lesser sentence in exchange for a guilty plea will not abrogate

---

[20] First State Habeas Transcript, at p. 18.

33

the plea should a heavier sentence actually be imposed.");
*Spinelli v. Collins*, 992 F.2d at 561 (holding a defendant's subjective misunderstanding of his parole eligibility did not render his guilty plea involuntary or unknowing); *United States v. Santa Lucia*, 991 F.2d at 180 (holding a defendant's reliance upon his counsel's erroneous prediction of the actual sentence he would receive did not render the defendant's guilty plea involuntary or unknowing where the defendant had been advised by the Court of the maximum sentence possible under applicable law); *United States v. Jones*, 905 F.2d 867, 868 (5th Cir. 1990)(holding the same); *Harmason v. Smith*, 888 F.2d at 1529-31 (holding a defendant's reliance on his trial counsel's ultimately erroneous prediction of a 15-year sentence did not render the defendant's guilty plea involuntary); *Davis v. Butler*, 825 F.2d at 894 (holding District Court properly rejected petitioner's claim that his trial counsel promised petitioner would receive a pardon within three years because at his plea hearing the petitioner had specifically denied any promises had been made to induce his guilty plea).

    2.  <u>The Knowing and Intelligent Nature of Petitioner's Plea</u>

    For a guilty plea to be "intelligently" and "knowingly" entered, the defendant must understand the true nature of the charge against him, comprehend the waiver of his constitutional rights resulting from his guilty plea, and understand "the

consequences" of his guilty plea, respectively. *See Matthew v. Johnson*, 201 F.3d at 365 ("The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving.").

> A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), *misrepresentation (including unfulfilled or unfulfillable promises),* or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.* bribes).

*Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970)(emphasis added).

> A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense.

*Henderson v. Morgan*, 426 U.S. 637, 645, 96 S.Ct. 2253, 2258, 49 L.Ed.2d 108 (1976)(*citations omitted*).

> Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial.  First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth.  Second, is the right to trial by jury.  Third, is the right to confront one's accusers.  We cannot presume a waiver of these three important federal rights from a silent record.

*Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed. 274 (1969)(*citations omitted*).

A federal court will uphold a guilty plea challenged in a habeas corpus proceeding if the plea was knowing, voluntary, and intelligent. *See United States v. Washington*, 480 F.3d 309, 315 (5th Cir. 2007)("To be valid, a guilty plea must be voluntary, knowing, and intelligent. * * * The conditions for a valid plea require, among other things, that the defendant have notice of the charges against him, understand the constitutional protections waived, and have access to the advice of competent counsel."); *United States v. Burns*, 433 F.3d 442, 449 (5th Cir. 2005)("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."); *Duke v. Cockrell*, 292 F.3d 414, 416 (5th Cir. 2002)(holding the defendant must be informed of the consequences of his plea, "however, the defendant need only understand the direct consequences of the plea; he need not be made aware of every consequences that, absent a plea of guilty, would not otherwise occur."), *cert. denied*, 537 U.S. 975 (2002); *United States v. Hernandez*, 234 F.3d at 254 n.3 (recognizing that while the terms "voluntary" and "knowing" are frequently used interchangeably, they embody different concepts, i.e., a plea of guilty is not voluntary if induced by threats, misrepresentations, unfulfilled promises, or promises of an improper nature, whereas a plea is not knowing unless the

defendant understand the maximum possible penalty, including any potential fine and the effect of any special parole or supervised release term); *Montoya v. Johnson*, 226 F.3d at 404 ("A guilty plea will be upheld on habeas review if entered knowingly, voluntarily, and intelligently."); *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995)(holding the same); *Hobbs v. Blackburn*, 752 F.2d at 1081 (holding the same).

> In order for a guilty plea to satisfy the requirements of due process, the plea must constitute an intelligent admission of the commission of the offense based on the receipt of real notice of the true nature of the charge.  The defendant must have a full understanding of what the plea connotes in particular, she must possess an understanding of the law in relation to the facts.  A plea is not voluntary if the accused has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt.  At the core of our jurisprudence on this subject is a recognition that the guilty plea is perhaps the supreme instance of waiver known to our system of justice, one by which all of its trial rights and safeguards are voluntarily foregone, and the defendant deliberately submits to conviction.  If this is to be permitted, at the minimum a decent system of justice will concern itself that the admission is voluntary and the defendant knows what it is he is admitting, so that he does not mistakenly consent to be punished for a crime he did not commit.  Simply put, to convict someone of a crime on the basis of conduct that does not constitute the crime offends the basic notions of justice and fair play embodied in the Constitution. (*footnotes omitted*)

*United States v. Briggs*, 939 F.2d 222, 227 (5th Cir. 1991).

> Due process requires that a guilty plea be a knowing and voluntary act; the defendant must be advised of and understand the consequences of the plea.  "The consequences of a guilty plea, with respect to sentencing, mean only that the defendant must know the maximum prison term and fine for the offense charged.

> As long as the defendant understood the length of the
> time he might possibly receive, he was fully aware of
> his plea's consequences." (*citations omitted*)

United States v. Pearson, 910 F.2d 221, 223 (5th Cir. 1990),
*cert. denied*, 498 U.S. 1093 (1991).

A plea is "intelligent" if the defendant understood the
nature and substance of the charges against him and not
necessarily whether he understood their technical legal effect.
*Duke v. Cockrell*, 292 F.3d at 416; *Daniel v. Cockrell*, 283 F.3d
at 703-04; *James v. Cain*, 56 F.3d at 666; *Taylor v. Whitley*, 933
F.2d 325, 329 (5th Cir. 1991), *cert. denied*, 503 U.S. 988 (1992).
A guilty plea is "intelligent" even if the trial court failed to
specifically explain to the defendant the nature of the offense
*if* the record shows that the defendant understood the charge and
its consequences. *United States v. Reyna*, 130 F.3d 104, 110 (5th
Cir. 1997), *cert. denied*, 523 U.S. 1033 (1998); *Bonvillain v.
Blackburn*, 780 F.2d 1248, 1250 (5th Cir. 1986), *cert. denied*, 476
U.S. 1143 (1986); *Davis v. Butler*, 825 F.2d at 893; *Hobbs v.
Blackburn*, 752 F.2d at 1081.  However, the defendant must
understand what he is being charged with. *United States v.
Suarez*, 155 F.3d 521, 524-25 (5th Cir. 1998).

Petitioner has *not* presented this Court with any specific
factual allegations or *credible* evidence establishing that he was
not adequately informed of the nature of the *charge* against him
prior to his guilty plea.  Likewise, petitioner alleges no

38

specific facts showing he was unaware of the constitutional rights he waived when he entered his guilty plea.  On the contrary, petitioner's plea documents include express assertions by petitioner that he understood and recognized he was waiving his constitutional rights to trial by jury, cross-examination of witnesses, and the right to remain silent.[21]  Thus, the Court must focus on whether petitioner understood "the consequences" of his plea.

With respect to guilty pleas, the "knowing" requirement that a defendant understand "the consequences" of a guilty plea means only that the defendant must know the maximum prison term and fine for the offense charged. *Duke v. Cockrell*, 292 F.3d at 416-17 (holding the defendant need only understand the direct consequences of his plea, i.e., the immediate and automatic consequences of that plea such as the maximum sentence length or fine); *United States v. Hernandez*, 234 F.3d at 256-57 (holding a federal defendant need not be advised of the effect of Title 18 U.S.C. §3584 on any subsequently-imposed state criminal sentence before a guilty plea may be accepted in federal court); *United States v. Dees*, 125 F.3d 261, 269 (5th Cir. 1997)(failure to inform defendant she might be held accountable under the federal Sentencing Guidelines for the whole amount of loss did not render

---

[21] First State Habeas Transcript, at pp. 17, 22.

39

plea unknowing where defendant was informed of proper range of potential sentence and received a sentence within that range), *cert. denied*, 522 U.S. 1152 (1998); *Ables v. Scott*, 73 F.3d 591, 592-93 n.2 (5th Cir. 1996)(state criminal defendant's plea was not rendered unknowing by virtue of state trial court's failure to admonish defendant of mandatory minimum 15-year sentence if defendant was adjudicated a repeat offender where state trial court advised defendant of maximum sentence defendant could receive), *cert. denied*, 517 U.S. 1198 (1996); *James v. Cain*, 56 F.3d at 666, (holding, as long as the defendant understands the length of time he might possibly receive, he is fully aware of his plea's consequences); *Spinelli v. Collins*, 992 F.2d at 561 (defendant's subjective misunderstanding that he would be eligible for parole in 5 years when, in fact, he was not eligible for parole for 20 years did not render plea unknowing); *Barbee v. Ruth*, 678 F.2d 634, 635 (5th Cir. 1982)("The consequences of a guilty plea, with respect to sentencing, mean only that the defendant must know the maximum prison term and fine for the offense charged."), *cert. denied*, 459 U.S. 867 (1982).

It is not necessary that a defendant be advised of all of the "collateral" consequences of his plea. *See Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985) (holding the Constitution does not require that the state furnish the defendant with information on parole eligibility in order for

40

the defendant's plea to be voluntary); *United States v. Bethurum*, 343 F.3d 712, 718 (5th Cir. 2003)(holding a defendant's waivers can be knowing and voluntary even when the defendant was not warned that his conviction could be used as a sentence enhancement in a subsequent trial, his driver's license could be forfeited, he was ineligible for parole, or his guilty plea would result in a loss of voting rights and right to travel abroad), *cert. denied*, 540 U.S. 1162 (2004); *United States v. Abreo*, 30 F.3d at 32 (holding a federal district court need not advise a defendant that a guilty plea waived the defendant's right to challenge on appeal the trial court's adverse ruling on the defendant's motion to suppress); *United States v. Banda*, 1 F.3d 354, 356 (5th Cir. 1993)(holding that a federal district court was not required to advise the defendant of the possibility of deportation prior to accepting defendant's guilty plea); *United States v. Osiemi*, 980 F.2d 344, 349 (5th Cir. 1993)(holding a court is not required to discuss the possibility of deportation on a defendant because deportation is only a collateral consequence of a guilty plea); *United States v. Bell*, 966 F.2d 914, 916 (5th Cir. 1992)(holding a trial court is not required to advise the defendant of the availability of a conditional guilty plea prior to accepting a guilty plea); *Johnson v. Puckett*, 930 F.2d 445, 448 n.2 (5th Cir. 1991)(holding a state trial court was not required to advise a defendant of the impact of his guilty

plea on defendant's eligibility for good time credits), *cert. denied*, 502 U.S. 890 (1991); *United States v. Ballard*, 919 F.2d 255, 258 (5th Cir. 1990)(holding a court need not advise a defendant prior to accepting a guilty plea of the possible enhancing effect of a guilty plea on future sentences or of the effect a guilty plea will have on the defendant's good time credits or even of the possibility that a guilty plea will mandate the imposition of a mandatory special parole term), *cert. denied*, 499 U.S. 954 (1991); *United States v. Edwards*, 911 F.2d 1031, 1035 (5th Cir. 1990)(holding a state court was not required to advise a defendant of the possible enhancing effect his guilty plea in that court would have on the same defendant's subsequent sentencing in federal court); *United States v. Posner*, 865 F.2d 654, 660 (5th Cir. 1989)(holding a federal district court need not advise the defendant about his parole eligibility before accepting a guilty plea).   For example, the Constitution does not require the State to furnish a criminal defendant with information about parole eligibility in order for the defendant's plea of guilty to be knowing. *James v. Cain*, 56 F.3d at 666, *citing Czere v. Butler*, 833 F.2d 59, 63 (5th Cir. 1987).   "A plea agreement contains no implied warranty that parole laws will not change." *James v. Cain*, 56 F.3d at 666, *citing McNeil v. Blackburn*, 802 F.2d 830, 832 (5th Cir. 1986).

It is likewise unnecessary that the defendant be informed that his federal sentence may run consecutively to a forthcoming state sentence. *See United States v. Hernandez*, 234 F.3d at 256-57, (holding that a sentencing court need not advise a federal defendant that his federal sentence will run consecutively to a forthcoming state sentence because the consecutive or concurrent nature of the federal sentence does not affect the duration of the defendant's federal sentence).  A defendant's mere expectation about the commutation and parole process is simply no ground for habeas corpus relief. *James v. Cain*, 56 F.3d at 667; *Dunn v. Magio*, 712 F.2d 998, 999-1001 (5th Cir. 1983), *cert. denied*, 465 U.S. 1031 (1984).

Petitioner has not alleged any specific facts establishing that he was unaware of the maximum potential sentence he faced if he chose to plead guilty.  Nor has petitioner alleged any facts establishing he was unaware of the range of sentence which could be imposed upon him pursuant to his plea agreement.  The plea documents which petitioner executed as part of his plea agreement affirmatively establish petitioner was aware of the maximum sentence he could receive if he chose to plead guilty.  In fact, petitioner's plea documents establish beyond any doubt petitioner actually received exactly the sentence for which he bargained. Petitioner alleges no facts suggesting he did not understand the

plain meaning of the language contained in his plea documents when he executed same.

D.    Conclusions

The state habeas trial court was faced with plea documents in which petitioner purported to voluntarily, intelligently, and knowingly enter a guilty plea pursuant to a plea agreement which petitioner does not allege to have been breached.

The Texas Court of Criminal Appeals' rejection on the merits of petitioner's claims that his guilty plea was involuntary and unknowing was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor based on an unreasonable determination of the facts in light of the evidence presented in the petitioner's state habeas corpus proceedings.

## V. Coerced "Confession"

A.    The Claim

In his second claim, petitioner argues his guilty plea was the product of a "coerced confession," i.e., his trial counsel coerced petitioner into pleading guilty by informing petitioner that, if he did not accept the state's plea offer, petitioner would receive a sentence of from 25 to 99 years.

B.   <u>State Court Disposition</u>

The state habeas court concluded petitioner's guilty plea was entered knowingly and voluntarily.[22]  The Texas Court of Criminal Appeals implicitly adopted the state habeas trial court's conclusions when it denied petitioner's second state habeas application. *Ex parte Joe Gilbert Young*, App. no. 64,967-02 (Tex. Crim. App. September 27, 2006).

C.   <u>AEDPA Review</u>

Petitioner's complaint of a "coerced confession" is, in reality, little more than a repetition of his claim that his guilty plea was involuntary.  Petitioner identifies no "confession" other than the judicial confession implicit in his guilty plea which he claims was "coerced."

> A plea of guilty admits all the elements of a formal criminal charge and waives all non-jurisdictional defects in the proceedings leading to conviction.  The plea waives claims of governmental misconduct during the investigation and improper motives for prosecution. A guilty plea also eliminates objections to searches and seizures that violate the Fourth Amendment.

*United States v. Cothran*, 302 F.3d 279, 285-286 (5th Cir. 2002).

For the reasons discussed at length in Section IV.C.1. above, the Texas Court of Criminal Appeals' rejection on the merits of petitioner's involuntary guilty plea claim was neither contrary to, nor involved an unreasonable application of, clearly

---

[22] First State Habeas Transcript, at p. 59; Second State Habeas Transcript, at p. 28.

established Federal law, as determined by the Supreme Court of the United States, nor based on an unreasonable determination of the facts in light of the evidence presented in the petitioner's state habeas corpus proceedings.

## VI. Ineffective Assistance Claims

A.   The Claims

In his third claim, petitioner argues his trial counsel rendered ineffective assistance in connection with petitioner's guilty plea by (1) coercing petitioner into pleading guilty by telling petitioner he would receive a 25-to-99 year sentence if petitioner proceeded to trial, (2) failing to adequately and independently investigate the case against petitioner, specifically by failing to interview the petitioner's passenger regarding the pre-textual nature of the police stop of petitioner's vehicle and the illegality of the ensuing search of petitioner's person and vehicle, (3) allowing federal agents to question petitioner in connection with the federal income tax investigation of petitioner's trial counsel, (4) failing to adequately meet with petitioner while petitioner was in custody, and (5) virtue of the conflict of interest which arose when petitioner and his mother were questioned by federal investigators regarding their financial arrangements with petitioner's trial counsel.

B.    <u>State Court Disposition</u>

The state habeas trial court (1) found the affidavit of petitioner's former trial counsel credible insofar as said counsel stated he did not believe a conflict of interest existed in connection with his defense of petitioner, he had adequate opportunity to investigate the case against petitioner, he explained the consequences of petitioner's plea to petitioner, and he independently investigated the case against petitioner and (2) concluded petitioner failed to overcome the presumption that his trial counsel's performance fell within the parameters of effective assistance.[23]  The Texas Court of Criminal Appeals implicitly adopted the state habeas trial court's conclusions when it denied petitioner's second state habeas application. *Ex parte Joe Gilbert Young*, App. no. 64,967-02 (Tex. Crim. App. September 27, 2006).

C.    <u>AEDPA Review</u>

1.    <u>The Federal Constitutional Standard of Review</u>

The constitutional standard for determining whether a criminal defendant has been denied the effective assistance of *trial* counsel, as guaranteed by the Sixth Amendment, was

---

[23] First State Habeas Transcript, at pp. 57-59; Second State Habeas Transcript, at pp. 25-28.

47

announced by the Supreme Court in *Strickland v. Washington*, 466

U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984):

> A convicted defendant's claim that counsel's assistance
> was so defective as to require reversal of a conviction
> or death sentence has two components.  First, the
> defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made
> errors so serious that counsel was not functioning as
> the "counsel" guaranteed the defendant by the Sixth
> Amendment.  Second, the defendant must show that the
> deficient performance prejudiced the defense.  This
> requires showing that counsel's errors were so serious
> as to deprive the defendant of a fair trial, a trial
> whose result is reliable.

To satisfy the first prong of *Strickland*, i.e., establish

that his counsel's performance was constitutionally deficient, a

convicted defendant must show that counsel's representation "fell

below an objective standard of reasonableness." *Wiggins v. Smith*,

539 U.S. 510, 521, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003);

*Williams v. Taylor*, 529 U.S. 362, 390-91, 120 S.Ct. 1495, 1511,

146 L.Ed.2d 389 (2000).  In so doing, a convicted defendant must

carry the burden of proof and overcome a strong presumption that

the conduct of his trial counsel falls within a wide range of

reasonable professional assistance. *Strickland v. Washington*, 466

U.S. at 687-91, 104 S.Ct. at 2064-66. Courts are extremely

deferential in scrutinizing the performance of counsel and make

every effort to eliminate the distorting effects of hindsight.

*See Wiggins v. Smith*, 539 U.S. at 523, 123 S.Ct. at 2536 (holding

the proper analysis under the first prong of *Strickland* is an

objective review of the reasonableness of counsel's performance under prevailing professional norms which includes a context-dependent consideration of the challenged conduct as seen from the perspective of said counsel at the time).  It is strongly presumed  counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland v. Washington*, 466 U.S. at 690, 104 S.Ct. at 2066.

To satisfy the "prejudice" prong, a convicted defendant must establish a reasonable probability that, but for the objectively unreasonable misconduct of his counsel, the result of the proceeding would have been different. *Wiggins v. Smith*, 539 U.S. at 534, 123 S.Ct. at 2542; *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2068.  A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. *Id.*  In evaluating prejudice, a federal habeas court must re-weigh the evidence in aggravation against the totality of available mitigating evidence. *Wiggins v. Smith*, 539 U.S. at 534, 123 S.Ct. at 2542.

In evaluating petitioner's complaints about the performance of his counsel under the AEDPA, the issue before this Court is whether the Texas Court of Criminal Appeals could reasonably have concluded petitioner's complaints about his trial counsel's performance failed to satisfy either prong of the *Strickland*

analysis. *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003), *cert. denied*, 540 U.S. 1154 (2004).  In making this determination, this Court must consider the underlying *Strickland* standard. *Id.*  Where the state courts failed to adjudicate either prong of the *Strickland* test, this Court's review of the un-adjudicated prong is *de novo*. *See Rompilla v. Beard*, 545 U.S. 374, 390, 125 S.Ct. 2456, 2467, 162 L.Ed.2d 360 (2005)(holding *de novo* review of the prejudice prong of *Strickland* was required where the state courts rested their rejection of an ineffective assistance claim on the deficient performance prong and never addressed the issue of prejudice); *Wiggins v. Smith*, 539 U.S. at 534, 123 S.Ct. at 2542 (holding the same).

A habeas petitioner has the burden to prove both prongs of the *Strickland* ineffective assistance standard by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000), *cert. denied*, 522 U.S. 1067 (2001).  As explained above, under the well-settled *Strickland* standard, the Supreme Court recognizes a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Bell v. Cone*, 535 U.S. at 698, 122 S.Ct. at 1852; *Strickland v. Washington*, 466 U.S. at 690, 104 S.Ct. at 2066; *Scheanette v. Quarterman*, 482 F.3d 815, 820 (5th Cir. 2007); *Sonnier v. Quarterman*, 476 F.3d 349, 356 (5th Cir. 2007), *cert. filed June 5, 2007 (06-11804)*; *Amador v. Quarterman*,

458 F.3d 397, 410 (5th Cir. 2006), *cert. denied*, ___ U.S. ___, 127 S.Ct. 2129, 167 L.Ed.2d 866 (2007); *Gonzales v. Quarterman*, 458 F.3d 384, 390 (5th Cir. 2006), *cert. denied*, ___ U.S. ___, 127 S.Ct. 1909, 167 L.Ed.2d 568 (2007).

Furthermore, under the AEDPA, in order to obtain federal habeas relief on an ineffective assistance claim rejected on the merits by a state court, the petitioner must do more than convince the federal court the state court applied *Strickland* incorrectly - the petitioner must show the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner. *Bell v. Cone*, 535 U.S. at 699, 122 S.Ct. at 1852.

The fundamental analytical problem with all of petitioner's complaints of ineffective assistance in this cause is the fact petitioner failed to present the state habeas court with any fact-specific allegations, much less any *evidence*, other than that contained in the petitioner's trial records, addressing the objective reasonableness of petitioner's trial counsel's strategic and tactical decision-making.

2.   Inadequate Investigation

In his second and fourth assertions of ineffective assistance outlined in Section VI.A. above, petitioner complains his trial counsel failed to adequately meet with petitioner,

51

failed to adequately and independently investigate the case against petitioner, and failed to interview the passenger in petitioner's vehicle at the time of the stop of petitioner's vehicle.  Petitioner argues in highly conclusory terms that, if his trial counsel had conducted an independent investigation into the case against petitioner (and more specifically had said counsel interviewed petitioner's passenger), said counsel would have learned unspecified facts showing the traffic stop of petitioner's vehicle was pre-textual in nature, thereby rendering the subsequent warrantless search of petitioner's person and vehicle illegal.

The initial problem with these arguments is that petitioner fails to explain why petitioner was himself unable to communicate this same factual information to his trial counsel.

Second, petitioner does not allege any specific facts showing the passenger of his vehicle on the occasion in question was available and would have been willing to speak with petitioner's trial counsel concerning the incident in question. Petitioner's passenger, whom petitioner failed to identify by name in his pleadings in either the state courts or this Court, was under no legal obligation to speak with petitioner's defense counsel and could readily have refused all of said counsel's requests for an interview. *See Johnson v. Puckett*, 176 F.3d 809, 816 (5th Cir. 1999)(holding a prosecution witness's refusal to

talk with defense counsel did not rise to the level of "cause" sufficient to overcome a procedural default where there was no showing the witness's refusal was the result of official intimidation, threats, or duress); *United States v. Soape*, 169 F.3d 257, 271 n.9 (5th Cir. 1999)(recognizing that a government witness who does not wish to speak to or be interviewed by the defense prior to trial may not be required to do so), *cert. denied*, 527 U.S. 1011 (1999); *United States v. Caldwell*, 750 F.2d 341, 347 (5th Cir. 1984)(noting that a defendant's right of access to a witness exists coextensively with that witness's right to refuse to say anything), *cert. denied*, 471 U.S. 1007 (1985); *United States v. Benson*, 495 F.2d 475, 479 (5th Cir. 1974)(holding the uniform rule is that a government witness who does not wish to be interviewed by the defense may not be required to do so), *cert. denied*, 419 U.S. 1035 (1974).  Thus, the state habeas court could have reasonably concluded there was nothing objectively unreasonable with the failure of petitioner's trial counsel to contact petitioner's passenger prior to trial.

The third problem with petitioner's complaints of allegedly inadequate investigation by his trial counsel is the fact petitioner fails to allege any specific facts showing precisely what factual information his passenger could have revealed about the circumstances of petitioner's traffic stop which petitioner himself was unable to communicate to his own trial counsel.

Thus, petitioner has failed to allege specific facts showing that he was "prejudiced" within the meaning of *Strickland* by his trial counsel's failures to either interview petitioner's passenger or conduct a more thorough investigation into the case against petitioner.  Complaints of uncalled witnesses are generally disfavored because presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative. *See Coble v. Dretke*, ___ F.3d ___, ___, 2007 WL 2306905, *4 (5th Cir. August 14, 2007)(complaints regarding uncalled witnesses address a matter of trial strategy and are speculative in nature); *Miller v. Dretke*, 420 F.3d 356, 362 (5th Cir. 2005)(such complaints necessarily involve matters of trial strategy); *Graves v. Cockrell*, 351 F.3d 143, 156 (5th Cir. 2003)(such complaints impinge on matters of trial strategy and are speculative in nature); *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002)(such complaints are speculative in nature).  Thus, the burden was on petitioner during his state habeas corpus proceeding to allege and prove specific facts which showed his trial counsel's failure to pursue and present the potentially exculpatory or mitigating evidence fell outside the wide range of presumptively reasonable professional performance. *See Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994) (holding absent a specific, affirmative, showing of precisely what evidence or

54

testimony was rendered unavailable due to a trial counsel's failure to investigate, develop, and present same, i.e., a showing of exactly what the missing evidence or testimony would have been, a court cannot even begin to apply the *Strickland* analysis because it is very difficult to determine whether the defendant was prejudiced by any such deficiencies in counsel's performance).  Petitioner utterly failed to carry this burden.

The fourth problem with petitioner's complaint that his trial counsel failed to interview petitioner's passenger is that petitioner failed to allege specific facts showing precisely what information petitioner's trial counsel possessed regarding the potential benefits to be derived from interviewing petitioner's passenger.  The reasonableness of a trial counsel's pretrial investigation is evaluated in light of the information reasonably available to said counsel at that time. *See Wiggins v. Smith*, 539 U.S. at 523, 123 S.Ct. at 2536 ("In assessing counsel's investigation, we must conduct an objective review of their performance, measured for 'reasonableness under prevailing professional norms,' which includes a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time'").

> Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.  A convicted defendant making a claim of ineffective assistance must

> identify the acts or omissions of counsel that are
> alleged not to have been the result of reasonable
> professional judgment.  The court must then determine
> whether, in light of all the circumstances, the
> identified acts or omissions were outside the wide
> range of professionally competent assistance.  In
> making that determination, the court should keep in
> mind that counsel's function, as elaborated in
> prevailing professional norms, is to make the
> adversarial testing process work in the particular
> case.  At the same time, the court should recognize
> that counsel is strongly presumed to have rendered
> adequate assistance and made all significant decisions
> in the exercise of reasonable professional judgment.

*Strickland v. Washington*, 466 U.S. at 690, 104 S.Ct. at 2066.

Petitioner has failed to allege any specific facts showing what information he furnished his own trial counsel regarding the scope of the personal knowledge of petitioner's passenger. Petitioner has also failed to identify any information in police reports or other sources available to petitioner's trial counsel prior to trial which would have alerted said counsel to the possibility petitioner's passenger could furnish potentially beneficial information which was not already available to said counsel through petitioner himself or other available sources. Therefore, petitioner failed to allege any specific facts showing his trial counsel's decision *not* to interview petitioner's passenger was objectively unreasonable.

Petitioner's conclusory complaints that his trial counsel failed to adequately investigate the case against petitioner and failed to interview petitioner's passenger do not satisfy either prong of *Strickland*.

56

3.   Coerced Guilty Plea

In his first assertion of ineffective assistance outlined above, petitioner argues his trial counsel "coerced" petitioner into pleading guilty by telling petitioner he would face a sentence of 25-to-99 years if petitioner proceeded to trial. Petitioner does not allege his trial counsel inaccurately calculated the potential range of sentence which might have been imposed had petitioner been convicted as a habitual offender under the indictment against petitioner.

Given the admissions contained in petitioner's plea documents, there does not appear to have been anything objectively unreasonable with the advice petitioner's trial counsel gave petitioner regarding the likely outcome of a trial. Petitioner does not contest the facts (1) he was carrying a bag of crack cocaine at the time of his arrest, (2) he was carrying additional crack cocaine packaged for sale on his person at the time of his arrest, or (3) additional crack cocaine wad found inside his vehicle following his arrest.  Petitioner alleges no specific facts showing that any viable defense existed to the possession-with-intent-to-distribute charge against him at the time his trial counsel advised petitioner of the possible consequences of proceeding to trial.  Instead, petitioner offers only conclusory assertions that the stop of his vehicle was pre-textual, thereby invalidating his subsequent arrest and the

search of his vehicle.  However, petitioner does not allege any
specific facts showing there was anything inappropriate with the
stop of his vehicle.  Specifically, petitioner does *not*
contradict the allegations in the police report included in
petitioner's plea documents that petitioner's vehicle was
observed crossing a double-yellow line into on-coming traffic.
Moreover, petitioner expressly averred in his plea documents that
no one had threatened, coerced, or placed him in fear to induce
his guilty plea and he was pleading guilty because he was guilty
and for no other reason.[24]

   Under these circumstances, there does not appear to be
anything objectively unreasonable with the observation of
petitioner's trial counsel that petitioner faced a sentence of
25-to-99 years if petitioner proceeded to trial.  Nor has
petitioner alleged any facts establishing a reasonable
probability that, but for petitioner's trial counsel's candid
admission of petitioner's extremely shallow prospects for success
at trial, the outcome of petitioner's state criminal proceeding
would have been different.

   4.   Conflict of Interest

   In his third and fifth assertions of ineffective assistance,
petitioner argues his trial counsel was hampered by a conflict of

---

   [24] First State Habeas Transcript, at p. 18.

interest arising from the federal investigation into his trial
counsel's taxes and the questioning of petitioner and his mother
by federal investigators.

    a.    <u>Inapplicability of *Cuyler v. Sullivan*</u>

The Sixth Amendment right to counsel includes the right to
representation that is free from any conflict of interest. *United
States v. Garcia-Jasso*, 472 F.3d 239, 243 (5th Cir. 2006); *United
States v. Vasquez*, 298 F.3d 354, 360 (5th Cir. 2002), *cert.
denied*, 537 U.S. 1024 (2002); *United States v. Vaquero*, 997 F.2d
78, 89 (5th Cir. 1993), *cert. denied*, 510 U.S. 1016 (1993).  A
conflict of interest exists when defense counsel places himself
in a position conducive to divided loyalties. *United States v.
Vasquez*, 298 F.3d at 360; *United States v. Vaquero*, 997 F.2d at
89.  "In order to establish a violation of the Sixth Amendment, a
defendant who raised no objection at trial must demonstrate that
an actual conflict of interest adversely affected his lawyer's
performance." Cuyler v. Sullivan 446 U.S. 335, 348, 100 S.Ct.
1708, 1718, 64 L.Ed.2d 333 (1980); *United States v. Infante*, 404
F.3d 376, 390-91 (5th Cir. 2005); *Ramirez v. Dretke*, 396 F.3d
646, 649 (5th Cir. 2005); *United States v. Salado*, 339 F.3d 285,
291 (5th Cir. 2003).  The *Cuyler* standard differs substantially
from the *Strickland* test in that *Cuyler* requires no showing of
"prejudice." *See Strickland v. Washington*, 466 U.S. at 692, 104

S.Ct. at 2067 (recognizing prejudice is presumed under the *Cuyler* test only if the defendant demonstrates that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance."); *United States v. Newell*, 315 F.3d 510, 516 (5th Cir. 2002)("When a defendant has been able to show that his counsel 'actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance,' constitutional error has occurred and prejudice is inherent in the conflict."); *Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000)(discussing the distinction between the *Cuyler* and *Strickland* tests).

Under the *Cuyler* test, an "actual conflict" exists when defense counsel is compelled to compromise his duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client. *Perillo v. Johnson*, 205 F.3d at 781.  A defendant must show more than a speculative or potential conflict. *United States v. Garcia-Jasso*, 472 F.3d at 243; *United States v. Infante*, 404 U.S. at 391.  The defendant must demonstrate that his counsel made a choice between possible alternative courses of action; if he did not make such a choice, the conflict remained hypothetical. *United States v. Garcia-Jasso*, 472 F.3d at 243. The mere possibility of a conflict, absent a showing that the

attorney actively represented conflicting interests, is not sufficient. *Cuyler v. Sullivan*, 446 U.S. at 350, 100 S.Ct. at 1719 ("But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance."); *United States v. Villarreal*, 324 F.3d 319, 327 (5th Cir. 2003).

"An adverse effect on counsel's performance may be shown with evidence that counsel's judgment was actually fettered by concern over the effect of certain trial decisions on other clients." *United States v. Infante*, 404 F.3d at 393; *Perillo v. Johnson*, 205 F.3d at 807. The defendant must establish adverse effect by demonstrating there was some plausible alternative defense strategy that could have been pursued, but was not, because of the actual conflict. *United States v. Infante*, 404 F.3d at 393; *Perillo v. Johnson*, 205 F.3d at 781; *Beathard v. Johnson*, 177 F.3d 340, 345 (5th Cir. 1999), *cert. denied*, 528 U.S. 954 (1999). "To prevail, a defendant must identify 'some plausible defense strategy or tactic that might have been pursued but was not, because of the conflict of interest.'" *United States v. Villarreal*, 324 F.3d at 327; *Hernandez v. Johnson*, 108 F.3d 554, 560 (5th Cir. 1997), *cert. denied*, 522 U.S. 984 (1997); *Perillo v. Johnson*, 79 F.3d 441, 449 (5th Cir. 1996). "A conflict of interest is present 'whenever one defendant stands to

*gain significantly* by counsel adducing probative evidence or advancing plausible arguments that are damaging to the cause of a co-defendant whom counsel is also representing.'" *Ramirez v. Dretke*, 396 F.3d at 650.  "An actual conflict of interest exists if counsel's introduction of probative evidence or plausible arguments that would significantly benefit one defendant would damage the defense of another defendant whom the same counsel is representing." *United States v. Salado*, 339 F.3d at 291; *United States v. Rico*, 51 F.3d 495, 509 (5th Cir. 1995), *cert. denied,* 516 U.S. 883 (1995).

In *Beets v. Scott*, 65 F.3d 1258 (5th Cir. 1995)(*en banc*), *cert. denied*, 517 U.S. 1157 (1996), the Fifth Circuit rejected a broad-ranging application of the *Cuyler* standard to complaints of ineffective assistance arising from alleged conflicts of interest by defense counsel. *See Beets v. Scott*, 65 F.3d at 1268, (holding that not every potential conflict, even in multiple client representation cases, is an "actual conflict' for Sixth Amendment purposes).  Subsequently, the Fifth Circuit has consistently refused to apply the *Cuyler* test outside the context of multiple representation situations. *See*, *e.g.*, *United States v. Garza*, 429 F.3d 165, 172 (5th Cir. 2005)("*Cuyler* only applies where an attorney was effectively, if not technically, representing multiple clients in the same proceeding."), *cert. denied*, 546 U.S. 1220 (2006); *United States v. Newell*, 315 F.3d at 516

(holding *Strickland* "more appropriately gauges an attorney's alleged conflict of interest arising not from multiple client representation but from a conflict between the attorney's personal interest and that of his client"); *Perillo v. Johnson*, 205 F.3d at 781 ("An 'actual conflict' exists when defense counsel is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client."); *Moreland v. Scott*, 175 F.3d 347, 349 (5th Cir. 1999)("cases in which it is alleged that the attorney's representation was affected by his own self-interest are evaluated under the more relaxed *Strickland* standard."), *cert. denied*, 528 U.S. 937 (1999); *Hernandez v. Johnson*, 108 F.3d at 559 ("This circuit has limited *Cuyler* to actual conflicts resulting from a lawyer's representation of multiple criminal defendants."). Petitioner's complaints of "conflict of interest" by his trial counsel fall outside the situations in which the fifth Circuit applies the *Cuyler* test. *United States v. Garza*, 429 F.3d at 172; *Perillo v. Johnson*, 205 F.3d at 781; *Hernandez v. Johnson*, 108 F.3d at 559; *Beets v. Scott*, 65 F.3d at 1268.

### b.   Inapplicability of *Cronic v. United States*

In *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), decided the same day as *Strickland*, the

Supreme Court held that a presumption of prejudice similar to
that recognized in *Cuyler* arises in three narrow circumstances:
first, when a criminal defendant is completely denied the
assistance of counsel; second, when counsel entirely fails to
subject the prosecution's case to meaningful adversarial testing;
and finally, where the circumstances are such that even competent
counsel very likely could not render effective assistance. *United
States v. Cronic*, 466 U.S. at 659, 104 S.Ct. at 2047.  As
examples of the latter two situations, respectively, the Supreme
Court cited the denial of effective cross-examination in *Davis v.
Alaska*, 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347
(1974)(defendant was denied the opportunity to cross-examine the
prosecution's key witness for bias), and the incendiary
circumstances surrounding the trial of the so-called "Scottsboro
Boys" addressed in *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55,
77 L.Ed. 158 (1932)(no individual attorney was appointed to
represent the defendants and trial proceeded after a volunteer
attorney from another state appeared on the first day of trial
but confessed he had not had an opportunity to prepare for
trial). *United States v. Cronic*, 466 U.S. at 659-61, 104 S.Ct. at
2047-48.  In a footnote, the Supreme Court recognized the
continuing efficacy of its earlier holding in *Cuyler*, presuming
prejudice where a defendant establishes an actual conflict of

interest adversely affected his counsel's performance. *United States v. Cronic*, 466 U.S. at 661 n.31, 104 S.Ct. at 2048 n.31.

In *Bell v. Cone*, 535 U.S. 685, 695-96, 122 S.Ct. 1843, 1851, 152 L.Ed.2d 914 (2002), the Supreme Court reiterated that the second exception to the requirement of *Strickland* "prejudice" it had envisioned in *Cronic* was limited to situations in which defense counsel *completely* failed to subject the prosecution's case to meaningful adversarial testing. *See Bell v. Cone*, 535 U.S. at 697-98, 122 S.Ct. at 1851-52 (holding complaints about trial counsel's waiver of closing argument at the punishment phase of trial and failure to adduce mitigating evidence insufficient to create a presumption of prejudice absent a showing trial counsel completely failed to challenge the prosecution's case throughout the sentencing proceeding).

The presumption of prejudice recognized in *Cronic* does not apply where the defendant complains of merely shoddy or poor performance by his trial counsel; for a defendant to be entitled to such a presumption, his attorney's failure must be complete. *See Bell v. Cone*, 535 U.S. at 697, 122 S.Ct. at 1851 (holding the presumption applicable only when counsel entirely failed to subject the prosecution's case to meaningful adversarial testing); *United States v. Griffin*, 324 F.3d 330, 364, 364 (5th Cir. 2003)("When the defendant complains of errors, omissions, or strategic blunders, prejudice is not presumed; bad lawyering,

regardless of how bad, does not support the *per se* presumption of prejudice."); *Riddle v. Cockrell*, 288 F.3d 713, 718 (5th Cir. 2002)(holding "constructive denial of counsel" sufficient to support a presumption of prejudice arises only when counsel was absent from the courtroom, there was an actual conflict of interest, or there was official interference with the defense), *cert. denied*, 537 U.S. 953 (2002); *Mayo v. Cockrell*, 287 F.3d 336, 340 n.3 (5th Cir. 2002)(holding the same), *cert. denied*, 537 U.S. 975 (2002); *Burdine v. Johnson*, 262 F.3d 336, 344 n.4 (5th Cir. 2001)(holding the same), *cert. denied*, 535 U.S. 1120 (2002); *Gochicoa v. Johnson*, 238 F.3d 278, 284 (5th Cir. 2000)("'A constructive denial of counsel occurs in only a very narrow spectrum of cases where the circumstances leading to counsel's ineffectiveness are so egregious that the defendant was in effect denied any meaningful assistance at all.' We have found constructive denial in cases involving the absence of counsel from the courtroom, conflicts of interest between defense counsel and the defendant, and official interference with the defense; and have stated that constructive denial will be found when counsel fails to subject the prosecution's case to any meaningful adversarial testing."(*citations and footnote omitted*)).

Petitioner's allegations that his trial counsel inadequately investigated the case against petitioner, failed to interview petitioner's passenger, and advised petitioner of the likelihood

petitioner would receive a sentence of from 25-to-99 years if
petitioner proceeded to trial do not fall within the narrow scope
of the presumed prejudice rule announced in *Cronic*.

      c.   Applicability of *Strickland* Analysis

     Petitioner's complaints that his trial counsel operated
under a "conflict of interest" arising from the fact petitioner
and petitioner's mother were questioned by federal agents during
the tax investigation and prosecution of petitioner's trial
counsel do not involve a situation in which petitioner's trial
counsel is alleged to have been engaged in the representation of
multiple clients with divergent or conflicting interests.
Likewise, petitioner's complaints about his trial counsel's
failures to adequately investigate the case against petitioner
and to interview petitioner's passenger do not amount to
assertions of an actual conflict of interest or establish that
said counsel "completely failed' to subject the prosecution's
case to meaningful adversarial testing.  Therefore, petitioner's
"conflict of interest" ineffective assistance claims herein are
properly analyzed under the dual prongs of *Strickland*. *See Bell
v. Cone*, 535 U.S. at 697-98, 122 S.Ct. at 1851-52 (holding
complaints of waiver of oral argument and failure to adduce
mitigating evidence should be analyzed under the *Strickland*
standard); *United States v. Newell*, 315 F.3d at 516 (holding
*Strickland* "more appropriately gauges an attorney's alleged

conflict of interest arising not from multiple client representation but from a conflict between the attorney's personal interest and that of his client"); *United States v. Vasquez*, 298 F.3d at 360 ("The framework for analyzing attorney conflicts outside of the multiple or serial client context was elucidated in *Strickland v. Washington*."(citation omitted)).

    d.  <u>Synthesis</u>

Petitioner does not allege any specific facts showing how his questioning - or his mother's - by federal tax investigators adversely affected his trial counsel's ability to represent petitioner in an unrelated criminal proceeding.  For example, petitioner does not allege any facts showing a causal relationship between the federal investigation of petitioner's trial counsel and said counsel's failure to interview petitioner's passenger.  Likewise, petitioner does *not* allege any facts showing that his interrogation by federal tax investigators impaired or interfered with petitioner's ability to communicate with his trial counsel concerning the state drug charges against petitioner.  Nor does petitioner allege any specific facts showing the federal tax investigation of petitioner's trial counsel adversely impacted said counsel's investigation of the case against petitioner.  Finally, petitioner alleges no facts showing it was even possible for his trial counsel to prevent petitioner's questioning by federal tax investigators.

Petitioner's purely speculative assertion that his trial counsel lacked sufficient time to adequately investigate the case against petitioner during the course of the federal investigation of said counsel do not furnish a basis for a finding of ineffective assistance. *Murphy v. Dretke*, 416 F.3d 427, 437 (5th Cir. 2005), *cert. denied*, 546 U.S. 1099 (2006); *Collier v. Cockrell*, 300 F.3d 577, 587 (5th Cir. 2002), *cert. denied*, 537 U.S. 1084 (2002); *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983).  Petitioner has failed to allege any specific facts in support of his conflict of interest complaints sufficient to satisfy either prong of *Strickland*.

5.   Conclusion

The Texas Court of Criminal Appeals' denial on the merits of petitioner's multi-faceted ineffective assistance claim was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor based on an unreasonable determination of the facts in light of the evidence presented in the petitioner's state trial and state habeas corpus proceedings.

**VII. Foreclosure of Illegal Search and Seizure Claim**

A.   The Claim

In his fourth claim herein, petitioner argues the traffic stop which led to the search of his person and his arrest was

69

unjustified and illegal, even though petitioner does not deny he drove across a double yellow line into the path of on-coming traffic on the occasion in question.

B.    State Court Disposition

The state habeas trial court concluded petitioner's guilty plea was knowingly and voluntarily entered.[25]  The Texas Court of Criminal Appeals implicitly adopted the state habeas trial court's conclusions when it denied petitioner's second state habeas application. *Ex parte Joe Gilbert Young*, App. no. 64,967-02 (Tex. Crim. App. September 27, 2006).

C.    AEDPA Review

A guilty plea, voluntarily entered, waives all non-jurisdictional errors by the trial court that preceded the petitioner's guilty plea; complaints of alleged Fourth Amendment violations are *not* cognizable in collateral attacks upon a guilty plea because the validity of a guilty plea is a question separate and distinct from allegations of misconduct during the criminal investigation which preceded the plea. *See United States v. Broce*, 488 U.S. 563, 569, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989)("A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a

---

[25] First State Habeas Transcript, at p. 59; Second State Habeas Transcript, at p. 28.

70

binding, final judgment of guilt and a lawful sentence.
Accordingly, when the judgment of conviction upon a guilty plea
has become final and the offender seeks to reopen the proceeding,
the inquiry is ordinarily confined to whether the underlying plea
was both counseled and voluntary.  If the answer is in the
affirmative then the conviction and the plea, as a general rule,
foreclose the collateral attack."); *Haring v. Prosise*, 462 U.S.
306, 320-22, 103 S.Ct. 2368, 2377, 76 L.Ed.2d 595 (1983)(holding
the validity of a conviction pursuant to a guilty plea is not
affected by a Fourth Amendment violation because the conviction
does not rest on evidence improperly seized: "the conclusion that
a Fourth Amendment claim ordinarily may not be raised in a habeas
proceeding following a plea of guilty does not rest on any notion
of waiver, but rests on the simple fact that the claim is
irrelevant to the constitutional validity of the conviction.");
*Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36
L.Ed.2d 235 (1973)("a guilty plea represents a break in the chain
of events which has preceded it in the criminal process.  When a
criminal defendant has solemnly admitted in open court that he is
in fact guilty of the offense with which he is charged, he may
not thereafter raise independent claims relating to the
deprivation of constitutional rights that occurred prior to the
entry of the guilty plea."); *United States v. Cothran*, 302 F.3d
at 286 (holding an unconditional guilty plea eliminates all

objections to searches and seizures that allegedly violated the Fourth Amendment); *Matthew v. Johnson*, 201 F.3d at 364 ("It has long been the case that a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights."); *United States v. Owens*, 996 F.2d 59, 60 (5th Cir. 1993)(holding defendant's unconditional guilty plea foreclosed review of his complaint of illegal search and seizure); *United States v. Bell*, 966 F.2d 914, 915 (5th Cir. 1992)(holding a valid guilty plea waived alleged violations of the defendant's speedy trial rights); *United States v. Smallwood*, 920 F.2d 1231, 1240 (5th Cir. 1991)(holding a guilty plea foreclosed defendant's challenge to the sentencing court's consideration of drugs allegedly seized illegally), *cert. denied*, 501 U.S. 1238 (1991); *United States v. Benavides*, 793 F.2d 612, 618 (5th Cir. 1986)(holding the trial court's acceptance of a defendant's unconditional guilty plea effectively precluded any subsequent challenge to the trial court's ruling on the defendant's motion to suppress), *cert. denied*, 479 U.S. 868 (1986); *Norman v. McCotter*, 765 F.2d 504, 511 (5th Cir. 1985)(complaints of illegal search and seizure not subject to federal habeas review following entry of an unconditional guilty plea); *Franklin v. United States*, 589 F.2d 192, 194-95 (5th Cir. 1979)(holding a guilty plea foreclosed consideration of a

defendant's claim of illegal search and seizure), *cert. denied*, 441 U.S. 950 (1979).

Under well-settled federal law, petitioner's unconditional guilty plea effectively forecloses federal habeas review of his complaints regarding the validity of the traffic stop which led to his search and arrest.

The Texas Court of Criminal Appeals' rejection on the merits of petitioner's illegal search and seizure claim was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor based on an unreasonable determination of the facts in light of the evidence presented in the petitioner's state trial and state habeas corpus proceedings.

## VIII. <u>Certificate of Appealability</u>

The AEDPA converted the "certificate of probable cause" previously required as a prerequisite to an appeal from the denial of a petition for federal habeas corpus relief into a "Certificate of Appealability" ("CoA"). *See Hill v. Johnson*, 114 F.3d 78, 80 (5th Cir. 1997)(recognizing the "substantial showing" requirement for a CoA under the AEDPA is merely a change in nomenclature from the CPC standard); *Muniz v. Johnson*, 114 F.3d 43, 45 (5th Cir. 1997)(holding the standard for obtaining a CoA is the same as for a CPC).  The CoA requirement supersedes the

previous requirement for a certificate of probable cause to appeal for federal habeas corpus petitions filed after the effective date of the AEDPA. *Robison v. Johnson*, 151 F.3d 256, 259 n.2 (5th Cir. 1998), *cert. denied*, 526 U.S. 1100 (1999); *Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997), *cert. denied sub nom. Monroe v. Johnson*, 523 U.S. 1041 (1998).

Under the AEDPA, before a petitioner may appeal the denial of a habeas corpus petition filed under Section 2254, the petitioner must obtain a CoA. *Miller-El v. Johnson*, 537 U.S. 322, 335-36, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003); 28 U.S.C. §2253(c)(2).  Likewise, under the AEDPA, appellate review of a habeas petition is limited to the issues on which a CoA is granted. *See Crutcher v. Cockrell*, 301 F.3d 656, 658 n.10 (5th Cir. 2002)(holding a CoA is granted on an issue-by-issue basis, thereby limiting appellate review to those issues); *Jones v. Cain*, 227 F.3d 228, 230 n.2 (5th Cir. 2000)(holding the same); *Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997)(holding the scope of appellate review of denial of a habeas petition limited to the issues on which CoA has been granted).  In other words, a CoA is granted or denied on an issue-by-issue basis, thereby limiting appellate review to those issues on which CoA is granted alone. *Crutcher v. Cockrell*, 301 F.3d at 658 n.10; *Lackey v. Johnson*, 116 F.3d at 151; *Hill v. Johnson*, 114 F.3d at 80; *Muniz*

*v. Johnson*, 114 F.3d at 45; *Murphy v. Johnson*, 110 F.3d 10, 11 n.1 (5th Cir. 1997); 28 U.S.C. §2253(c)(3).

A CoA will not be granted unless the petitioner makes a substantial showing of the denial of a constitutional right. *Tennard v. Dretke*, 542 U.S. 274, 282, 124 S.Ct. 2562, 2569, 159 L.Ed.2d 384 (2004); *Miller-El v. Johnson*, 537 U.S. at 336, 123 S.Ct. at 1039; *Slack v. McDaniel*, 529 U.S. 473, 483, 120 S.Ct. 1595, 1603, 146 L.Ed.2d 542 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090 (1983).  To make such a showing, the petitioner need *not* show he will prevail on the merits but, rather, must demonstrate that reasonable jurists could debate whether (or, for that matter, agree) the petition should have been resolved in a different manner or that the issues presented are adequate to deserve encouragement to proceed further. *Tennard v. Dretke*, 542 U.S. at 282, 124 S.Ct. at 2569; *Miller-El v. Johnson*, 537 U.S. at 336, 123 S.Ct. at 1039; *Slack v. McDaniel*, 529 U.S. at 484, 120 S.Ct. at 1604; *Barefoot v. Estelle*, 463 U.S. at 893 n.4, 103 S.Ct. at 3394 n.4.  This Court is authorized to address the propriety of granting a CoA *sua sponte*. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

The showing necessary to obtain a CoA on a particular claim is dependent upon the manner in which the District Court has disposed of a claim.  If this Court rejects a prisoner's

constitutional claim on the merits, the petitioner must demonstrate reasonable jurists could find the court's assessment of the constitutional claim to be debatable or wrong. *Miller-El v. Johnson*, 537 U.S. at 338, 123 S.Ct. at 1040. *Accord Tennard v. Dretke*, 542 U.S. at 282, 124 S.Ct. at 2569.  In a case in which the petitioner wishes to challenge on appeal this Court's dismissal of a claim for a reason not of constitutional dimension, such as procedural default, limitations, or lack of exhaustion, the petitioner must show jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right <u>and</u> whether this Court was correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S. at 484, 120 S.Ct. at 1604 (holding when a district court denies a habeas claim on procedural grounds, without reaching the underlying constitutional claim, a CoA may issue only when the petitioner shows that reasonable jurists would find it debatable whether (1) the claim is a valid assertion of the denial of a constitutional right and (2) the district court's procedural ruling was correct).

None of petitioner's claims herein satisfy the standard for obtaining a Certificate of Appealability.  Petitioner's conclusory collateral attack upon his guilty plea is refuted by the sworn assertions petitioner made in his plea documents. Petitioner's complaints about the performance of his trial

76

counsel are utterly without arguable merit.  Attorney Brown negotiated a plea bargain for petitioner which reduced petitioner's potential exposure from a sentence as a habitual offender for 99 years to an 18-year sentence and finding merely that petitioner was a repeat offender.  Petitioner has alleged no specific facts showing there was any potentially viable defense available to him had he proceeded to trial.  Under these circumstances, attorney Brown's observation that petitioner would likely receive a sentence of from 25-to-99 years if petitioner proceeded to trial was the antithesis of deficient performance; it was practically prescient.  Moreover, petitioner has alleged no specific facts showing how his questioning by federal tax agents interfered with attorney Brown's representation of petitioner.  Petitioner's claims herein are not subject to a different disposition by reasonable jurists and do not deserve encouragement to proceed further.  Accordingly, petitioner is not entitled to a CoA on any of his claims herein.

Accordingly, it is hereby **ORDERED** that:

1.   All relief requested in petitioner's federal habeas corpus petition, filed November 13, 2006, docket entry no. 3, is **DENIED**.

2.   Respondent's motion to dismiss petitioner's petition as untimely, filed March 30, 2007, docket entry no. 18, is **DENIED**.

3.   All other pending motions are **DISMISSED** AS MOOT.

4.   Petitioner is **DENIED** a Certificate of Appealability.

5.   The Clerk shall prepare and enter a Judgment in conformity with this Memorandum Opinion and Order.

**SIGNED** on September 4, 2007.

_Nancy Stein Nowak_

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE